(32 Misc. Rep. 26.)

### SPIER v. HYDE et al.

(Supreme Court, Special Term, New York County. June, 1900.)

ACCOUNTING.

    Any right of plaintiff to an accounting under an agreement that, as compensation for his services in purchasing shares of stock for defendants, he should have a certain per cent. of the profits on resale, is barred by a subsequent agreement, standing unimpeached, that he should, for such services, have a definite number of the shares.

Action by Charles L. Spier against Charles L. Hyde and others. Plaintiff applies for appointment of a receiver pendente lite. Denied.

Weeks, Battle & Marshall (H. S. Marshall, of counsel), for plaintiff.
Alexander & Green (Charles W. Pierson, of counsel), for defendants.

LEVENTRITT, J. The action is for an accounting between the parties as to the proceeds in stock and money of a certain pool, combination, or partnership arrangement into which the plaintiff claims

they entered. This is an application for the appointment of a receiver pendente lite, of certain undisposed stock of the enterprise, and for an injunction restraining the defendants from disposing thereof. It appears that in December, 1898, the plaintiff was a salaried employé of a corporation of which the defendants were respectively president and vice president. At that time he brought to the attention of the defendant Hyde a valuable typesetting machine, secured by patents, domestic and foreign, and owned by the Goodson Typecasting & Setting Machine Company, a corporation doing business at Providence, R. I. Attracted by the merits of the machine, the plan was conceived to negotiate for and acquire options on a controlling interest in the 20,000 shares constituting the capital stock of the corporation. The plaintiff was commissioned to carry on the negotiations under an arrangement, as set out in the complaint, that, "if the said stock and the said patents could be obtained at a price thought by the defendants to be reasonable, they (the said defendants) would, on their part, purchase the said stock, and would reasonably compensate the said plaintiff for his services in securing such options to purchase." The plaintiff entered upon the employment, and with the co-operation of the defendant Hyde succeeded in securing for the defendants options on 10,100 shares for the sum of $106,000, and under those options the defendants subsequently purchased the stock. Thereafter, in order to reduce the compensation of the plaintiff to some degree of certainty, a pencil memorandum, initialed by the parties, was made on or about the 24th day of February, 1899, to the effect that plaintiff was to receive 250 of the 10,100 shares of the Goodson Typecasting & Setting Machine Company, and to participate in any surplus over the sum of $106,000 which might be realized on the sale of 4,750 of those shares. The balance, 5,100 shares, were concededly the property of the defendants. After this memorandum had been made, a new scheme was evolved, in accordance with which a new concern, the Goodson Graphotype Company, was incorporated under the laws of the state of New Jersey for the purpose of taking over the controlling interest, 10,100 shares, in the Goodson Typecasting & Setting Machine Company, and in exchange for which the new concern was to issue it own stock. Inasmuch as all the shares acquired under the option were to be surrendered, a new arrangement had to be made to measure the compensation of the plaintiff in the stock of the new company. This new arrangement was expressed in a letter under date of March 27, 1899, from the defendant Hyde to the plaintiff, and accepted by the latter. It provided for an exchange of 10,100 shares of the old for a like number of shares of the new stock, which latter was to be pooled, and eventually sold. The letter contains this paragraph:

"As consideration for your services in connection with this matter, and with the understanding that you are to devote your time exclusively hereafter to the promotion of the new company, and its business and welfare, until all the stock in the pool is sold, we would be willing to set aside for your services 15 per cent. of whatever net profits estimated on the above basis may be found to have been realized from the sale of the pooled stock after the entire 10,100 shares have been pooled and sold."

After this arrangement had been made, the proposed plan underwent further modification respecting the number of shares of the

new to be received in exchange for the 10,100 shares of the old stock. This led to a conversation on May 8, 1899, between the plaintiff and the defendant Hyde, the result of which was embodied in a letter of the same date as follows:

"Chas. L. Spier, Esq., New York—Dear Sir: In connection with my letter to you of March 27th in relation to the formation of the Goodson Graphotype Company, I beg to say that, as agreed between us to-day, you will be entitled to receive 375 shares of common stock of the Goodson Graphotype Company in the event of the formation of that company, which stock shall be in full for your services and all demands under my letter to you of March 27th, 1899. This, of course, depends upon the formation of the Goodson Graphotype Company, and the carrying out of our plans of reorganization as mentioned to you to-day.

"Yours, truly,    Chas. L. Hyde."

The plaintiff's assent to the foregoing terms is expressed in the following words, written beneath the defendant Hyde's signature:

"The above is perfectly satisfactory to me, and is hereby accepted and confirmed.    "Chas. L. Spier."

While the conditions mentioned in this final understanding have come to pass, the plaintiff affects entirely to disregard this agreement of May 8th, and bases his right to an accounting on the percentage of interest reserved to him in the agreement of March 27th. The complaint in no wise refers to the final agreement, and no relief whatsoever is sought against it. It is ignored, not assailed; and there is, consequently, no prayer to have it annulled, abrogated, or set aside. The affidavits, it is true, make reference to it, and contain statements to the effect that its acceptance was induced by misrepresentation. Even conceding their adequacy, they are emphatically denied in the answering affidavits, and are unconnected with the relief sought. It must be clear from this recital that whatever rights the plaintiff may have had under the agreement of March 27th cannot be regarded on this application as forming the basis for an accounting, or for any other relief, as all his rights and interests thereunder were finally liquidated under the agreement of May 8th, which fixed his compensation at 375 shares each of common and preferred stock. So long as that agreement stands unimpeached, what occasion can there be for an accounting? On its face his return is definitely, presently, fixed, and computed at a specified number of shares, and is no wise dependent on profits to be realized, or on any other contingency. It shows no such actual or quasi partnership relation as would entitle him to a receiver or to an accounting. Even conceding that the agreement of March 27, 1899, was expressive of such a joint adventure as would, under the authorities, subject the defendants to the duty of accounting on the theory of agency or a trust reposed, with respect to moneys or stock received (Schantz v. Oakman, 163 N. Y. 148, 57 N. E. 288), the subsequent and final agreement must be regarded as the very accounting or liquidation to which, under the earlier agreement, the plaintiff was entitled. That mutual, voluntary accounting, still in full force and effect, and unattacked in the complaint, is a bar to the compulsory accounting sought. The motion must be denied, with $10 costs.

Motion denied, with $10 costs.